CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA.
FILED
MAY 11 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| SANDRA G. MAUPIN, | ) | CASE NO. 4:11CV00032 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's January 18, 2008 protectively-filed applications for a period of disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated October 29, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since April 1, 2005, her alleged date of disability onset.[1] (R. 13.) The Law Judge determined plaintiff's obesity, degenerative joint

---

[1] In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is December 31, 2010. See 20 C.F.R. § 404.131(a).

1

disease, and borderline intellectual functioning were severe impairments. (R. 13-14.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 14-16.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of light work with several limitations.[2] (R. 16-24.)

The Law Judge relied on portions of the testimony of Asheley D. Wells, a vocational expert ("VE"), provided in response to questions premised on the Law Judge's RFC finding. (R. 24-25, 61-69.) Based on this testimony, the Law Judge determined that plaintiff's RFC did not prevent her from performing her past relevant work as a housekeeper and that a significant number of other representative jobs existed in the national economy that could be performed by a person with plaintiff's RFC. (R. 24.) Alternatively, the Law Judge also found that, if he accepted the opinions of the consultative examiners and gave credence to the majority of plaintiff's alleged limitations, plaintiff possessed the RFC necessary to perform unskilled sedentary work with limitations. Sedentary work is defined in 20 CFR § 404.1567(a). The additional limitations included that plaintiff required the use of a cane, could not climb ladders, ropes, or scaffolds and only occasionally perform other postural activities, was limited to no exposure to workplace hazards or extreme cold, and a sit/stand option. (R. 25, 65-67.) The VE testified that work would be available in the national and state economy to such a person, specifically as an order clerk, and that without the sit/stand option, several representative jobs

---

[2] Light work is defined in 20 CFR § 404.1567(b), with the Law Judge describing a range of light work as including the ability to lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. Law Judge included the additional limitations that plaintiff occasionally could climb ladders, ropes or scaffolds, and perform postural activities frequently, though he further found that she must avoid all exposure to extreme cold and was limited to performing simple, routine, repetitive work. (R. 16.)

2

would be available, including work as an order clerk, assembler, and thread separator. (R. 25, 65-67.) Accordingly, the Law Judge found plaintiff was not disabled under the Act. *Id.*

Plaintiff appealed the Law Judge's October 29, 2010 decision to the Appeals Council. (R. 1-7.) In its May 19, 2011 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In a brief supporting her motion for summary judgment, plaintiff asserts that the Commissioner's final decision fails to be supported by substantial evidence and is erroneous as a

3

matter of law. She claims that the Law Judge failed to properly perform a function-by-function assessment of her ability to perform the physical and mental demands of work, in several respects. (Dkt. No. 13, at 5.) In that connection, she first argues the Law Judge erred by not including any limitation in his RFC finding regarding her ability to stand and walk. Plaintiff offers that the record shows she required a cane, moved with difficulty during examination, and had a limited range of motion in her knees and hips. *Id.* at 5-7. She contends that, by not including any limitation, determining that plaintiff did not need a cane for ambulation, and assigning little weight to the opinions of consultative examiners who found otherwise, the Law Judge ignored evidence in the record and inappropriately substituted his own lay opinion for the consistent opinions of multiple medical professionals who had examined plaintiff. *Id.* at 7-8. Second, plaintiff asserts that the Law Judge failed to include any limitation on concentration, persistence, or pace in his RFC finding despite specifically determining that plaintiff had moderate difficulties in those areas. *Id.* at 8-10. Plaintiff contends that the limitation of "simple, routine, repetitive work" fails to accurately reflect plaintiff's mental limitations. *Id.* She also argues that this limitation indicates the Law Judge failed to perform a more detailed assessment of the plaintiff's capacity to perform the mental demands of work, as is required by the regulations. *Id.* at 10-12. Finally, plaintiff asserts that the Law Judge failed to consider the findings of Frank Russell, PhD, as to plaintiff's very low reading, spelling, and arithmetic scores, which plaintiff opined provided evidence of her illiteracy. *Id.* at 12-13. Accordingly, plaintiff asserts that the Law Judge's RFC finding is not supported by substantial evidence and is erroneous as a matter of law.

Next, plaintiff argues that the Law Judge applied an improper standard in evaluating her subjective complaints. (Dkt. No. 13, at 13.) She points out that a claimant need not provide

objective evidence to substantiate the intensity, persistence, and limiting effects of her pain. *Id.* at 15. Further, plaintiff asserts that her inability to afford treatment explains the lack of medical evidence in the record and necessitated the several consultative examinations, all of which, plaintiff claims, support her allegations. *Id.* at 14-15.

Plaintiff also argues that the Law Judge erroneously found that she was capable of performing her past-relevant work. (Dkt. No. 13, at 15-16.) Plaintiff offers that as the Law Judge failed, in plaintiff's opinion, to accurately assess her RFC, he could not then accurately compare her RFC to the physical and mental demands of her past-relevant work. *Id.* Accordingly, plaintiff believes that the Law Judge's determination at step four of the sequential evaluation is not supported by substantial evidence.

Further, plaintiff contends that the Law Judge erroneously relied upon the testimony of the VE. She asserts that the Law Judge failed to include all of her impairments in his hypothetical questions to the VE. (Dkt. No. 13, at 16-17.) She offers that the Law Judge should have included limitations in concentration, persistence, pace, reading, spelling, performing arithmetic, and literacy in his questions to the VE. *Id.* at 17. She claims that these restrictions, especially the last, could have been determinative, and that failing to accurately reflect them in the questions to the VE rendered the VE's responses insubstantial to support the Commissioner's decision to deny the claim. *Id.* at 18.

Finally, plaintiff argues that the Law Judge failed to properly consider her obesity. (Dkt. No. 13, at 18.) She points out that a claimant's obesity must be considered throughout the sequential evaluation process. *Id.* at 18-20. She asserts that the Law Judge failed to consider her obesity in his analysis after finding it to be a severe impairment, despite evidence that it affected her ability to sit, stand, and walk. *Id.* at 20. She contends that this oversight constitutes

5

reversible error, and, as a result, the final decision of the Commissioner is not supported by substantial evidence. *Id.* at 23. Accordingly, plaintiff moves that she be granted summary judgment or that the case be remanded to the Commissioner for a new administrative hearing. (Dkt. No. 12.)

In a brief in support of his motion for summary judgment, the Commissioner argues that there is substantial evidence supporting the Law Judge's decision. He argues that the Law Judge reasonably determined that plaintiff could, at a minimum, perform sedentary work. (Dkt. No. 15, at 13.) He contends that the Law Judge considered all relevant evidence in making his assessment, and that plaintiff's claims of extreme limitations are not supported by the record. *Id.* He points outs that Peter S. Trent, M.D., plaintiff's treating physician, recommended only conservative treatment with medication, specifically rejecting surgery as necessary, and never prescribed the use of a cane. *Id.* Further, he points out that plaintiff's x-ray and MRI reports revealed only mild impairments, providing support for the Law Judge's finding that her condition does not render her disabled. *Id.* at 13-14. The Commissioner acknowledges that plaintiff's consultative examinations noted more serious functional limitations, but he asserts that the examinations and the opinions of the consultants are not part of the longitudinal record and do not compel controlling weight. *Id.* at 14. Moreover, he argues that the Law Judge's decision to give them little weight was reasonable, offering that the opinions were based on plaintiff's self-reported limitations that were inconsistent with the minimal objective findings detailed in the record and in his brief. *Id.* at 14.

The Commissioner also points out that, even though the Law Judge found that plaintiff was capable of light work, he alternatively considered whether plaintiff could perform sedentary work with her alleged limitations. (Dkt. No. 15, at 15.) He offers that the Law Judge assumed

6

functional limitations in a light most favorable to plaintiff, including her alleged need for a cane, in analyzing whether she could perform sedentary work. *Id.* at 15-16. He concludes that there is substantial evidence in support of his finding that, based on the testimony of the VE and the grid rules, plaintiff's ability to perform sedentary work was impacted, but not precluded by the additional limitations. *Id.* at 15-16.

The Commissioner also argues that the Law Judge properly accounted for plaintiff's mental limitations, including concentration, persistence, pace, and borderline intellectual functioning, in his RFC assessment. (Dkt. No. 15, at 16.) He points out that plaintiff indicated no difficulties in concentration, persistence, or pace in her disability application and Function Reports, and that Dr. Russell's psychological examination identified no significant problems in these areas. *Id.* Further, he asserts that the Law Judge took those three limitations into account in his RFC finding by limiting plaintiff to simple, routine, repetitive, unskilled work.[3] *Id.* at 16-17. As for her purported borderline intellectual functioning, the Commissioner asserts that Dr. Russell questioned that diagnosis, indicating that he thought plaintiff was capable of achieving a higher level. *Id.* at 17. Additionally, the Commissioner notes that plaintiff has worked for a number of years without apparent difficulty because of her intellectual functioning and there is no evidence of a significant deterioration in her condition, indicating that she cannot be found disabled.[4] *Id.* at 17.

The Commissioner also argues that the Law Judge properly analyzed plaintiff's subjective complaints, following the two step process for evaluating plaintiff's complaints of

---

[3] The Commissioner is referring to the Law Judge's alternative sedentary RFC finding. (R. 25, 65-67.) The Commissioner acknowledges the many cases cited by plaintiff on this point that hold that the limitation of simple, routine, repetitive, work does not adequately reflect difficulties in concentration, persistence, or pace. However, he pointed out that none of the cases provide controlling legal authority to support her arguments, and that the limitation of unskilled work accommodated all of plaintiff's limitations. (Dkt. No. 15, at 17.)

[4] Citing *Craig v. Chater*, 76 F.3d 585, 596 n.7 (4th Cir. 1996).

7

pain. (Dkt. No. 15, at 17.) He contends that there is substantial evidence to support the Law Judge's finding that plaintiff was not entirely credible in several respects. *Id.* at 18. He offers that her testimony about her use of a cane is in conflict with the record and that the objective medical findings are inconsistent with plaintiff's subjective allegations. *Id.* at 18.

The Commissioner also believes the vocational evidence was relevant and provided substantial evidentiary support for the final decision. He asserts again that there is no evidence in either plaintiff's self-reported abilities or Dr. Russell's assessment that would indicate plaintiff was precluded from performing the unskilled jobs identified by the VE. *Id.* at 18-19. Further, he contends that the Law Judge had no obligation to consider whether plaintiff was illiterate as there is no record evidence supporting such allegation. *Id.* at 19. He asserts that the Law Judge examined the evidence, properly resolved inconsistencies and fairly set out all of plaintiff's established impairments in his questions to the VE. *Id.* at 19.

Addressing plaintiff's claim that the Law Judge failed to consider the effects of her obesity, the Commissioner offers that the Law Judge, in fact, complied with the regulations in considering plaintiff's obesity at each stage of the sequential evaluation process.[5] (Dkt. No. 15, at 20.) He offers that, while the Law Judge did not specifically discuss plaintiff's weight in his RFC finding, it is clear that he considered it when assessing her RFC and her ability to work. *Id.* at 20. For instance, the Commissioner cites Dr. Stowe's normal examination findings, despite also a finding plaintiff to be morbidly obese. *Id.* at 20-21. The Commissioner offers that plaintiff has not identified any examples of how the Law Judge failed to properly evaluate her obesity or that he failed to give plaintiff the benefit of the doubt by reducing her RFC and adding the use of a cane as a limitation. *Id.* at 21. Accordingly, the Commissioner submits that

---

[5] Citing SSR 02-1p, 67 Fed. Reg. 57859 (Sept. 12, 2002).

8

substantial evidence supports his final decision and requests that his motion for summary judgment be granted. *Id.* at 22.

Taking plaintiff's arguments in order, the undersigned first considers whether the Law Judge erred by not including additional limitations in his RFC finding. The first alleged limitation concerns plaintiff's ability to stand and walk, focusing on whether she requires the use of a cane. Plaintiff testified that Dr. Trent had prescribed the use of a cane, and she wrote in a functional assessment that it was prescribed in May 2007. (R. 57-58, 240.) However, there is no evidence in the record that Dr. Trent, or any other treating source, prescribed the use of a cane. Three consultative examiners did find that plaintiff required a cane for ambulation, and an Agency physician recommended that those findings be added to her RFC. (R. 297, 373, 379, 480.) The Law Judge found that neither plaintiff's treatment records nor the examination findings of the consultants indicated that plaintiff required the use of a cane. So, the Law Judge gave the opinions no significant weight and did not incorporate the recommendation of the Agency physician into his primary RFC finding. (R. 21-24.)

It does appear that the Law Judge went a bit beyond his own medical expertise in his analysis of the consultants' opinions. The Law Judge opined that the consultant opinions are not supported by the treatment notes of the longitudinal record or the findings of the consultative examinations. He is correct that no treating source indicated that plaintiff required the use of a cane, and Dr. Trent noted that plaintiff's condition was mild and should be treated conservatively.[6] (R. 363.) However, consultative examinations often fill out a record that, otherwise, may be inadequate to determine whether a claimant is disabled. *See* 20 C.F.R. §

---

[6] However, there are several reports of plaintiff having difficulty walking as result of her degenerative disease, dating as far back as 2006. (R. 255.) Also, the Law Judge is incorrect to state that there was no mention of plaintiff using a cane, outside of the consultative examinations, until July 2010. (R. 21.) A report from Unity Health Care indicates that plaintiff was using a cane in July 2008. (R. 427.)

9

404.1519 et seq. Here, two of the consults were ordered because plaintiff had no recent assessment of her condition, with her last examination by Dr. Trent having occurring in July of 2008. (R. 73-74, 361.) As for the findings of the consultative examinations, the Law Judge is correct that the opinion of consultative examiner, Rafael Lopez, M.D., contains conflicting findings and conclusions. Plaintiff's physical examination was essentially "normal," and her neurologic and diagnostic studies were "normal," revealing "minimal degenerative change with good maintenance of the joint space and normal alignment... ." (R. 295-299.) Similarly, there is substantial evidence supporting the Law Judge's determination that Dr. Stowe's opinion is not supported by his examination findings. Dr. Stowe did find evidence of reduced range of motion in plaintiff's hips and knees and observed plaintiff moving with difficulty, thus supporting his conclusion that plaintiff required a cane for ambulation. However, his conclusion that plaintiff could not stand for more than 2-3 minutes or sit for more than five minutes is not supported by his examination findings, or those of any other treating or examining physician. (R. 477-483.) These conclusions appear to be based on plaintiff's self-reported limitations.

However, Elliot Aleskow, M.D., conducted a full examination and found a limited range of movement in plaintiff's hips and knees, in support of his opinion that plaintiff requires the use of a cane. (R. 376-377.) The Law Judge may assign no weight to the opinions of medical professionals that are not supported either by the record or by their own examination findings, but he is not qualified to dismiss the findings of examiners simply because he disagrees with their interpretations of the medical evidence. While this opinion is not that of a treating source and, thus, not entitled to great weight and special consideration, it does reflect a degree of consensus among examining doctors selected by the Agency, which the Law Judge was not at liberty to ignore.

10

However, the Law Judge did not end his analysis upon finding that plaintiff was capable of light work. Instead, he took into account plaintiff's alleged limitations in her ability to stand and walk and arrived at an alternate RFC for simple, repetitive, unskilled sedentary work that accommodated the use of a cane, required no climbing ladders, ropes or scaffolds and only occasional performance of other postural activities, and involved no exposure to work place hazards and extreme cold. (R. 25, 66-67.) He certainly presented these limitations to the VE, and the VE testified that jobs would be available to a person with that RFC and those limitations.[7] Further, though the consultative examiners concluded that plaintiff required the use of a cane, neither Drs. Lopez nor Aleskow opined that she was disabled by her impairments.[8] (R. 295-299, 373.) Therefore, plaintiff's argument that the Law Judge failed to account for her physical impairments is unavailing, and there is substantial evidence in support of the Law Judge's alternate RFC finding and his conclusion that plaintiff is not disabled.

Plaintiff asserts that the Law Judge erred by failing to properly weigh any limitation on concentration, persistence, or pace. However, the record does not support plaintiff's alleged limitation. Plaintiff never indicated she had difficulties in concentration, persistence, or pace in her function reports and specifically stated that she could pay attention for "a long time," was "good" at following written and spoken instructions, and managed stress "okay." (R. 220-221, 239-240.) Plaintiff's disability report indicated she had no problems with understanding, concentrating, or answering. (R. 205.) Dr. Trent stated that she was "awake, alert, pleasant and

---

[7] As indicated earlier, with the addition of a sit/stand option, the VE testified that jobs would still exist in the national economy, including work as an order clerk, though the VE indicated that it was likely the only position that would exist with the addition of the sit/stand option. (R. 66-67.)

[8] Dr. Stowe's opinion is less certain given his finding that plaintiff cannot sit or stand for more than a few minutes. (R. 480.) However, the Law Judge incorporated a sit/stand option into his alternative RFC finding, and the VE testified that work as a order clerk would be available to a person with that RFC. (R. 25, 66-67.) Accordingly, Dr. Stowe's findings and opinion also likely support the finding that plaintiff is not disabled.

11

cooperative with the examination." (R. 423.) Dr. Russell did find that plaintiff was of borderline intellectual functioning with low scores in perceptual reasoning, processing speed, reading, spelling and arithmetic, which the Law Judge credited in finding that plaintiff had moderate difficulties in concentration, persistence, or pace.[9] (R. 16; 467-476.) However, Dr. Russell also indicated that there was no evidence of restlessness or distractibility, and that her thought processes were organized, logical, and coherent. (R. 470-472.) Given these findings, there is substantial evidence in support of the Law Judge's finding that plaintiff is limited to simple, routine, repetitive, unskilled work without additional limitations for concentration, persistence, or pace.

Plaintiff also asserts that the Law Judge erred by failing to consider Dr. Russell's findings that she had very low reading, spelling, and arithmetic scores, which plaintiff opines provides evidence of her illiteracy. Plaintiff never alleged that she was illiterate before her hearing, and she stated in a disability report that she could read and understand English, write more than her name, and that she was a high school graduate who had never attended special education classes. (R. 196, 202.) The disability report also noted that plaintiff had no difficulty reading or writing. (R. 205.) This report is in conflict with the findings and opinion of Dr. Russell, especially where Russell observed that plaintiff had been in a "slow learner's class" from eighth through twelfth grade and had the reading, writing, and arithmetic skills of a first grader. (R. 468.) Notwithstanding, Dr. Russell never concluded that plaintiff was illiterate and indicated that there was evidence plaintiff may have the ability to achieve higher scores. (R. 472.) The authority to resolve conflicts in the evidence lies with the Law Judge. *See Craig v. Chater*, 76 F.3d 585, 589-

---

[9] While the Law Judge found that Dr. Russell's opinion was entitled to no significant weight, he incorporated some of the findings of Dr. Russell into his primary RFC finding and his finding that plaintiff suffered severe impairments. He certainly gave Dr. Russell's opinion even more credence in arriving at his alternative RFC finding. (R. 13, 16, 22-23, 25.)

12

590 (4th Cir. 1996). Further, the Law Judge's questioning of the VE specifically took into account plaintiff's limited educational background and the minimum level of reading and writing ability that would be required as currently performed in the representative jobs. (R. 65-69.) His alternative RFC findings also limit plaintiff to simple, routine, repetitive, unskilled work, citing her low IQ scores. (R. 23.) To this extent, therefore, the Law Judge's determination of plaintiff's RFC is supported by substantial evidence.

Next, the undersigned turns to assess plaintiff's argument that the Law Judge applied an improper standard in evaluating her subjective complaints. While plaintiff must produce objective evidence showing a medically determinable impairment that reasonably could be expected to produce the alleged symptoms, she need not present objective evidence to substantiate her subjective claims regarding the intensity, persistence, and limiting effects of her pain. *Hines v. Barnhart*, 453 F.3d 559, 564-565 (4th Cir. 2006). However, objective evidence is vital to establishing the severity of a claimant's condition, particularly one that has mental components. *Craig v. Chater*, 76 F.3d 585, 595-596 (4th Cir. 1996). Here, the Law Judge focused on the lack of objective evidence in support of her alleged impairments, stating that her treatment record "does not support her allegations regarding the severity of her limitations." (R. 20.)

The Law Judge's analysis of the subjective evidence is limited, but he did address the totality of the evidence in reaching his determination of plaintiff's credibility. Specifically, the Law Judge discussed the lack of evidence in the record supporting plaintiff's testimony that she was prescribed a cane, gaps in plaintiff's treatment history, and intermittent work history before her disability onset date. (R. 20-21.) As set forth above, the record does not support plaintiff's assertion that she was prescribed a cane five years earlier. The first mention of her using a cane

13

appears in March and July 2008, less than three years before her hearing, and there is no evidence that the use of a cane was prescribed. (R. 295, 427.) Plaintiff asserts that the gaps in her treatment history were due to her inability to afford it, as a result of which she argues that it was improper for the Law Judge to consider these gaps when analyzing her credibility. *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). However, plaintiff has provided no evidence that she sought out treatment at the local Free Clinic, was barred from treatment because she was unable to afford it, or evidence to support her testimony that the Free Clinic told her, "they didn't have any doctors that could have the…ability to help me." (R. 59-60.); *See Murphy v. Sullivan*, 953 F.2d 383, 386-387 (8th Cir. 1992); *Wooten v. Shalala*, 998 F.2d 1012, 1993 WL 269267, at *3-4 (4th Cir. July 16, 1993). Further, the Law Judge pointed to the fact that plaintiff continued to smoke and was able to afford cigarettes, undermining plaintiff's testimony that she could not afford treatment. (R. 21, 59.); *See Mayle v. Astrue*, 2007 WL 4285383, at *22 (D. S.C. Dec. 3, 2007); *Aslinger v. Astrue*, 2011 WL 5410892 (E.D. Ky. Nov. 8, 2011). In the end, the evidence is in conflict, which places the Law Judge, rather than the court, in the best position to determine the credibility of witnesses and claimants. Moreover, the undersigned cannot say that the Law Judge's finding that plaintiff's allegations of the severity, intensity, and persistence of her symptoms were not entirely credible is unsupported by substantial evidence.

      Finally, plaintiff argues that the Law Judge failed to properly consider her obesity, pointing to Dr. Stowe's opinion that plaintiff's obesity affected her ability to sit, walk, and stand. (Dkt. No. 13, at 20.) In that regard, the Commissioner is to consider plaintiff's obesity at each step of the sequential evaluation process and determine whether her obesity acerbates the effects of her other impairments. SSR 02-1p, 67 Fed. Reg. 57859 (Sept. 12, 2002). It is true that the Law Judge did not specifically address the effect of plaintiff's obesity on her RFC, only

mentioning facts relating to her weight in each consultative examination. (R. 21-23.) SSR 02-1p provides, "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." SSR 02-1p, at 57863.

As said, the Law Judge did not explicitly state what effect plaintiff's obesity had on her other impairments or on his RFC finding. However, he did find her obesity to be a severe impairment and accurately summarized the requirements of SSR 02-1p. Further, he discussed the potential effects of obesity on musculoskeletal impairments and paid specific attention to plaintiff's musculoskeletal impairments. (R. 13-15, 17-21.) Dr. Stowe's findings regarding plaintiff's obesity are very limited and appear to be based primarily on her statements to him during the single examination. (R. 479.) Nor does his report suggest the manner or degree her obesity affects her ability to sit, walk, and stand. (R. 479.) Furthermore, the undersigned is of the view that the Law Judge's alternate RFC finding limiting plaintiff to sedentary labor accounted for any additional limitations resulting from her obesity.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, DENYING plaintiff's motion for summary judgment and motion to remand, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the

undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

May 11, 2012
Date